UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Robert Robitaille, Plaintiff, | : | Civil Action No. |
| | : | |
| vs. | : | |
| | : | |
| World Law Group, World Law Plan, | : | |
| Lloyd Ward & Associates, Defendants. | : | October 31, 2013 |

## COMPLAINT

The complaint of Robert Robitaille respectfully alleges:

## INTRODUCTION

1. Jurisdiction is conferred on this Court by 28 U.S.C. Section 1331, and supplemental jurisdiction exists foR the state law claims pursuant to 28 U.S.C. Section 1367.

2. Robert Robitaille is an individual who lives at 974 Broad Street in Stratford, Connecticut. Mr. Robitaille filed bankruptcy on May 3, 2012. He listed the claim which is the subject of this action as an asset of his bankruptcy estate. The Trustee of his bankruptcy estate did not administer the claim, and it became Mr. Robitaille's property once his case closed pursuant to 11 U.S.C. Section 554.

3. On or before November 17, 2010 and for some time before that, Mr. Robitaille was liable for credit card balances on debts he incurred primarily for his personal, family or household use.

4. From May 2010 through mid-October 2010, Mr. Robitaille took home approximately $4,766.00 a month. He was unemployed from mid-October 2010 through mid-November 2010 and received $304.00 a week in unemployment compensation until mid-November 2010. In mid-November 2010, Mr. Robitaille found a job, and took home approximately

   $6,716.67 a month.

5.  Lloyd Ward & Associates is a law firm with a place of business at 12655 N. Central Expressway, Suite 1000, Dallas, TX 75243. Upon information and belief, no employee of Lloyd Ward & Associates is licensed to practice law in the state of Connecticut.

6.  Upon information and belief, Lloyd Ward & Associates does business as World Law Group and/or World Law Plan. Neither World Law Group nor World Law Plan is registered as an artificial entity with the Secretary of the State of the State of Texas, although both entities maintain places of business at 12655 N. Central Expressway, Suite 800, Dallas, TX 75243.

7.  At all times mentioned in this complaint, World Law Group, World Law Plan and Lloyd Ward & Associates were engaged in the business of providing services to consumers, including negotiation with creditors on behalf of consumers owing debts.

8.  At all times mentioned in this complaint, World Law Group, World Law Plan and Lloyd Ward & Associates advertised their debt negotiation services on the world wide web, including, upon information and belief, an interactive website.

**Background:**

9.  On or about November 17, 2010, Mr. Robitaille discovered an internet website advertising the defendants' debt negotiation services. Mr. Robitaille entered his contact information into the defendants' website in order to request contact from the Defendants.

10.  On November 17, 2010, *exclusive* of his credit card debt, Mr. Robitaille's household expenses were approximately $7,783.00, including a mortgage payment reduced to $2,245.00 per month through his own negotiation with his lender.

11. On November 17, 2010, and at all times mentioned in this complaint, Mr. Robitaille's unsecured debt exceeded $100,000.00.

12. On or about November 17, 2010, Mr. Robitaille received an email communication from "Traci with World Law Plan." It said: "We are **World Law Plan**, Attorney's at Law and we have been successfully and LEGALLY reducing debt for our clients for more than 25 years. Because of our success, we already have relationships with all major US Banks – This means you'll benefit from our experience to settle your accounts for the lowest amount possible." At the bottom of the email message was the following statement: "*World Law Plan is affiliated with World Law Direct, a worldwide law network of licensed attorneys. For legal advice, expertise and court filings contact your World Law Group Legal Assistant or Attorney. World Law Plan and any affiliates do not provide tax or investment advice. Individual results may vary.*"

13. The email address of Traci with World Law Plan is "traci@worldlawplan.com." The website worldlawplan.com contains the following statements:

    a. "[C]lient has personally assigned state attorney, 24 hour access to legal advice for our clients, paid and free ask-a-lawyer services."

    b. "Our attorneys work with you to find the best solution to your individual needs."

    c. "What happens to my credit? In our Attorney Debt Negotiation Plan, creditors can report your accounts as late, which will have a damaging effect on your credit score. Once a mutually agreeable renegotiation is reached with each creditor, the creditors will mark the account as "Settled with a zero balance "… "Paid "paid satisfied"….."Paid settled"…Or something similar."

        d.    "When should I consider bankruptcy?  Bankruptcy is very serious and will stay with you for the rest of your life. Nothing is as damaging as Bankruptcy and the negative impact on your credit can be overwhelming. Bankruptcy is for consumers who are in serious financial hardship and for those that generally cannot even save minimal amounts to settle their obligations. Call Now: 1-888-538-3080."

        e.    "Can't I negotiate on my own?  The answer is yes. However, it can be very time intensive and involves a lot of paperwork and skilled negotiating efforts. Our company has the time, people, processes and systems to get the Attorney Debt Negotiation process started and completed for each of our enrolled clients."

        f.    "The 2010 FTC Debt Settlement Regulations and TSR Amendments has left many legitimate debt settlement owners with few choices to consider. These laws are very clear and straight forward, which is why partnering with just any service may lead to both state and federal charges most owners cannot afford.  World Law offers qualified debt settlement businesses an opportunity to finally get their services compliant."

14.    On or about January 10, 2011, the plaintiff, Robert Robitaille, entered into an agreement World Law Group titled "Client Service Agreement" (the "Agreement"). A copy of the Agreement is attached to this Complaint.

15.    Section 1 of the Agreement identifies Mr. Robitaille as "CLIENT."

16.    Section 2 of the Agreement states that "the subject matter of the representation is for World Law Group to provide bundled legal services as described in Section 4 and to assist in resolving the debts of CLIENT."

17. Section 4 of the Agreement, titled "**Initial Bundled Services Responsibility of World Law Group**," states "Attorney will provide the following bundled services during the first 30 days of enrollment; contract review, insolvency analysis, pre-bankruptcy screening and analysis, asset information collection and preservation analysis, asset information collection and preservation analysis, Fair Debt Collection Practices Act education course and collection of violation incidents, litigation preparedness program including evaluation of effective creditor collection options, and access to World Law Groups (*sic*) library of legal forms and information."

18. Section 5 of the Agreement states "The Law Firm will contact the client monthly to review and determine whether any material changes in clients income or expense, asset information, creditor contact, collection review and/or any other needs the client may have that may be directed through World Law Groups library of legal forms and information."  The Agreement does not define the capitalized term, the "Law Firm."

19. The capitalized word "Attorney" is not defined in the Agreement.

20. Section 6 of the Agreement states: "**Responsibilities of WORLD LAW GROUP**: World Law Group will provide debt negotiations (*sic*) and settlement services on behalf of CLIENT."

21. Section 7 of the Agreement states: "CLIENT shall be assigned a local attorney, who is in good standing with the State Bar where CLIENT is located, that will provide CLIENT with appropriate legal advice through representation.  This AGREEMENT includes the legal services identified in Sections 4 and 5, and legal advice regarding the negotiation and representation for debts properly enrolled and identified on page 10 of this

AGREEMENT, or for debts specified in Section 2, between World Law Group and CLIENT. The local attorney will review CLIENT'S case files, consult with CLIENT, explain to CLIENT their options if served or threatened with a lawsuit, and assist with filing an answer to any debt collection lawsuit filed against CLIENT. The local attorney will also advise CLIENT with regards to state and/or federal debt collection laws."

22. Section 8 of the Agreement states "This AGREEMENT does not include a personal appearance in a Court proceeding by Attorney or appearance as 'attorney of record' in any Court proceeding."

23. Section 10 of the Agreement states "Attorney will provide, through the Law Firm's Processing Division, certain non-legal processing duties required under this AGREEMENT, including certain client services, performing accounting, clerical work, and negotiating settlements.  WORLD LAW GROUP's processing division is WORLD LAW PLAN. WORLD LAW PLAN provides certain debt settlement services for clients of WORLD LAW GROUP. WORLD LAW PLAN shall have the same responsibilities under this AGREEMENT as WORLD LAW GROUP. The mailing address for WORLD LAW PLAN is 12655 N. Central Expressway, Suite 800, Dallas, Texas 75243."

24. Section 13 of the Agreement states "Attorney charges a set fee for total bundled legal services as described in Section 4. The calculation of this fee is set out in Schedule A long with the schedule of payments to collect that fee.  There is a onetime Attorney Retainer Fee of $199 that is included in the schedule A.  Initial bundled service fees are program fees and earned within the first 30 days.  Client however is not obligated to pay the entire amount within the first 30 days but permitted to pay those fees over the time

period indicated in schedule A."

25. Section 14 of the Agreement states: "Attorney charges a monthly service, monitoring, data collection and record upkeep fee of $84.95 per month and a $9.45 account service fee charged by Global Client Solutions for the maintenance of the Client's Special Purpose Account."

26. Section 15 of the Agreement states: "Attorney charges a flat fee for legal services per negotiated account. The calculation for this fee is set out in Schedule A and is based on the anticipated enrolled debt. This fee shall be earned whenever an enrolled account is settled pursuant to Sections 11 and 12 above. The fee taken shall be a prorated amount of the total legal fees based on a proportional amount of the enrolled debt as described in Section 2."

27. Section 16 of the Agreement states: "All fees are deemed legal fees and earned if and when received consistent with this contract. No money is kept in escrow and no legal fee is paid in advance."

28. Section 18 of the Agreement provides that "CLIENT has engaged Attorney for the purpose of evaluating all legal options in resolving CLIENT'S insolvency."

29. No "Schedule A" was attached to the Agreement.

30. Attached to, and incorporated into, the Agreement was an "Acknowledgment of Cancellation Effect," which contained a jurat and stated, in paragraph 2, a purported acknowledgment that "all my creditors are released from their obligations to abide by the Cease and Desist letters that were prepared on my behalf by World Law Group and that their pursuit of me for debt collection purposes is acceptable to me."

31. Also on or about January 10, 2011, the plaintiff executed an agreement with Global Client Solutions, LLC (the "Special Purpose Account Agreement.")

32. The second paragraph of the Special Purpose Account Agreement states that "In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program.  Your Account is an FDIC-insured sub-account within a master custodial account maintained at a bank designated or selected by Global.  Additionally, you authorize Global to transfer your account to another FDIC insured institution under the existing terms."  Account is defined as "your Special Purpose Account." Global is defined as Global Client Solutions, LLC.

33. Mr. Robitaille authorized Global to debit the sum of $1010.12 per month from his checking account on the thirtieth day of each month, and to transfer that sum to the Special Purpose Account.

34. On or about January 10, 2011, and continuing until the present time, Mr. Robitaille did not have disposable income of $1010.12, and, in fact, Mr. Robitaille's expenses exceed his income.

35. A special purpose account is generally one over which the depositor has only limited dominion and control. The deposit is usually made with special restrictions or limitations agreed upon between the bank and depositor.

36. On or about January 10, 2011, the defendants forwarded a "World Law Plan Welcome Kit" (the "Welcome Kit") to Mr. Robitaille.

37. The Welcome Kit stated that "our Settlement Advisers are highly trained professionals."

38. The Welcome Kit stated that Settlement Advisers are "very well trained."

39. The Welcome Kit stated that "World Law Plan knows the law."

40. The Welcome Kit advised Mr. Robitaille to "Rely on our experience and expertise and trust that we have your best interest at heart."

41. One of the frequently asked questions in the Welcome Kit was: "Do I continue making payments to my creditors?" The response was: "As long as your account remains current, your creditors will have no incentive to settle for less than the full amount."

42. Between November 30, 2011 and February 28, 2012, the sum of $11,394.52 was removed from Mr. Robitaille's checking account and transferred to the Special Purpose Account.

43. No payments were made to Mr. Robitaille's creditors from the Special Purpose Account.

44. By email, on March 9, 2012, Mr. Robitaille requested the return of the funds he deposited with World Law Group.

45. World Law Group forwarded $2971.56 to the plaintiff, but informed him that a full refund required "board approval," and that the board meeting would take place on March 28, 2012.

46. World Law Group did not return the remaining funds.

47. The fees the defendants charged were unconscionable.

48. The fees the defendants charged were not reasonable.

49. Many of the statements and representations the defendants made were false.

50. The actions of the defendants described herein, the Agreement and the Special Purpose Agreement offend public policy.

51. At the time he entered into the Agreement and the Special Purpose Agreement, Mr.

Robitaille, in light of his dire financial condition and the representations the defendants made, had no meaningful choice but to enter into the Agreement and the Special Purpose Agreement, the terms of which were unreasonably favorable to the defendants.

52. None of the defendants alerted Mr. Robitaille to the arbitration provisions of the Special Purpose Agreement.

### COUNT I (Fraudulent Misrepresentation)

53. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 52 hereof, as if fully restated herein. The defendants, through their website, Agreement, Special Purpose Account Agreement and Welcome Kit, represented that:

   a. They would give legal advice to the plaintiff;

   b. They were qualified to give legal advice to the plaintiff;

   c. Entering into a debt consolidation plan with the defendants would benefit Mr. Robitaille more than a bankruptcy filing;

   d. Mr. Robitaille could not obtain the same or better results in compromising his debts by negotiating with his creditors on his own than by entering into the Agreement and Special Purpose Account Agreement;

   e. Entering into the Agreement and Special Purpose Account Agreement and abiding by their terms would produce a better credit score for Mr. Robitaille than a bankruptcy filing; and

   f. Mr. Robitaille could successfully complete a program which required him to pay them more than a thousand dollars a month even though payment of that sum would not allow him to meet his living expenses.

54. At the time the defendants made these representations, they were untrue and the defendants knew they were untrue.

55. The defendants made these representations in order to induce Mr. Robitaille to enter into the Agreement and Special Purpose Account Agreement.

56. Mr. Robitaille entered into the Agreement and Special Purpose Account Agreement based on the defendants' misrepresentations.

57. As a result of the defendants' misrepresentations and his execution of the Agreement and Special Purpose Account Agreement, Mr. Robitaille sustained the following damages:

   a. He paid $11,394.52 to the defendants, and received nothing in return; and

   b. He did not file bankruptcy for more than a year after he entered into the Agreement and Special Purpose Account Agreement, delaying the repair of his credit for more than fifteen months.

## COUNT II (Negligent Misrepresentation)

58. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 57 hereof, as if fully restated herein. The defendants, through their website, Agreement, Special Purpose Account Agreement and Welcome Kit, which they operated and/or disseminated in the course of their business, represented that:

   a. They would give legal advice to the plaintiff;

   b. They were qualified to give legal advice to the plaintiff;

   c. Entering into a debt consolidation plan with the defendants would benefit Mr. Robitaille more than a bankruptcy filing;

   d. Mr. Robitaille could not obtain the same or better results in compromising his

debts by negotiating with his creditors on his own than by entering into the Agreement and Special Purpose Account Agreement;

 e. Entering into the Agreement and Special Purpose Account Agreement and abiding by its terms would produce a better credit score for Mr. Robitaille than a bankruptcy filing; and

 f. Mr. Robitaille could successfully complete a program which required him to pay them more than a thousand dollars a month even though payment of that sum would not allow him to meet his living expenses.

59. At the time the defendants made these representations, they knew, or should have known, they were untrue.

60. The defendants made these representations in order to induce Mr. Robitaille to enter into the Agreement and Special Purpose Account Agreement.

61. The defendants failed to exercise reasonable care or competence in obtaining or communicating the information on their website, in the Agreement, Special Purpose Account Agreement, and in the Welcome Kit to Mr. Robitaille and others.

62. Mr. Robitaille entered into the Agreement and Special Purpose Account Agreement based on the defendants' misrepresentations.

63. As a result of the defendants' misrepresentations and his execution of the Agreement and Special Purpose Account Agreement, Mr. Robitaille sustained the following damages:

 a. He paid $11,394.52 to the defendants, and received nothing in return; and

 b. He did not file bankruptcy for more than a year after he entered into the Agreement and Special Purpose Account Agreement, delaying the repair of his

credit for more than fifteen months.

## COUNT III (Unconscionability)

64. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 63 hereof, as if fully restated herein.  The Court should find, as a matter of law, that the terms of the Special Purpose Account Agreement and Special Purpose Account Agreement were substantively and procedurally unconscionable at the time they were made, and refuse to enforce any part of the Agreements that require arbitration of the Plaintiff's claims herein.

## COUNT IV (Violation of Credit Report Organizations Act)

65. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 64 hereof, as if fully restated herein.  The defendants World Law Group, World Law Plan and Lloyd Ward & Associates are credit repair organizations as defined by 15 U.S.C. Section 1679a.

66. The Plaintiff is an individual and a "consumer" as defined by 15 U.S.C. Section 1679a.

67. The defendants World Law Group, World Law Plan and Lloyd Ward & Associates, at all times mentioned in this complaint, were each entities engaged in interstate commerce to sell, provide and perform credit repair services within the meaning of the Credit Repair Organizations Act.  Specifically, the defendants used emails and websites to market their services and to promise to reduce consumers' debt loads and improve their credit scores.

68. The defendants World Law Group, World Law Plan and Lloyd Ward & Associates made or used untrue and misleading misrepresentations about their services.

69. The defendants World Law Group, World Law Plan and Lloyd Ward & Associates

engaged, directly or indirectly, in acts, practices, and courses of business that constituted or resulted in the commission of, or attempts to commit, a fraud or deception in connection with the offer or sale of their services.

70. As a result of the acts, practices and omissions of the defendants, Mr. Robitaille has suffered damages, including, but not limited to, payments to the defendants, and a delay in the repair of his credit.

### COUNT V (Conversion)

71. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 70 hereof, as if fully restated herein. The defendants wrongfully retained the Plaintiff's property, wrongfully refusing to deliver it to him after he demanded its return.

72. As a result of the defendants' refusal to return his property, the Plaintiff has suffered damages.

### COUNT VI (Statutory Theft under C.G.S. Section 52-564)

73. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 72 hereof, as if fully restated herein. By failing to return the funds he delivered to them, the defendants have stolen the property of the Plaintiff.

74. As a result of the defendants' theft of the Plaintiff's money, the Plaintiff suffered damages.

### COUNT VII (Unjust Enrichment)

75. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 74 hereof, as if fully restated herein. The defendants benefitted from their wrongful retention of the Plaintiff's payments to them.

76. The defendants unjustly failed to provide any benefit to the Plaintiff in return for his payments to them.

77. As a result of the defendants' retention of the Plaintiff's payments, he suffered damages.

### COUNT V (Violation of Connecticut Unfair Trade Practices Act- Connecticut General Statutes Section 42-110a *et seq.*)

78. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 77 hereof, as if fully restated herein. At the time the Agreement and the Special Purpose Account Agreement were executed, the defendants were engaged in the business of "credit counseling."

79. The actions of the defendants as described herein offend public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to the Debtor.

80. The defendants knew or should have known that there was no reasonable possibility that Mr. Robitaille, and others like him, could repay even a small portion of his unsecured debt.

81. At no time did the defendants or their website inform their clients of the potential adverse tax effects of "forgiveness of debt," falsely promising full satisfaction reports to their clients.

82. Upon information and belief, the defendants profit from the failure of their clients to make payments under their scheme, and their business model is an attempt to make the financially vulnerable their prey.

83. The actions of the defendants as described herein violated 16 CFR 310, which provides that a credit counseling agency may not take a fee for any services it performed unless it

is proportional to the amount paid to its clients' creditors.

84. World Law Group have retained $11,394.52. It paid nothing to Mr. Robitaille's creditors.

85. The actions of the defendants described herein violated 16 CFR 310 because it is clear that, in spite of its requirements, Mr. Robitaille did not own the funds deposited with the defendants and that he could not withdraw the funds at any time without penalty.

86. Mr. Robitaille suffered ascertainable losses as a result of the violations of the Connecticut Unfair Trade Practices Act by the defendants, in that he turned over $11,394.52 to the defendants for which he received nothing in return.

WHEREFORE, the Plaintiff requests that this Court enter judgment in his favor and against the Defendants as follows:

   a.   Declaring that the Agreement and Special Purpose Account Agreement are procedurally and substantively unconscionable, and declaring the Agreement and Special Purpose Account Agreement invalid and unenforceable;

   b.   Declaring that the representations made enticing Mr. Robitaille to enter into the Agreement and Special Purpose Account Agreement offend public policy, were immoral, unethical, oppressive, and unscrupulous in violation of Connecticut General Statutes Section 42-110a et seq., that the terms of the Agreement and Special Purpose Account Agreement offend public policy, were immoral, unethical, oppressive, and unscrupulous in violation of Connecticut General Statutes Section 42-110a et seq., and declaring the Agreement and Special Purpose Account Agreement invalid and unenforceable;

   c.   Awarding damages under 15 U.S.C. Section 1679(g)(a)(3) and under Connecticut

    General Statutes Section 42-110g;

  d. Awarding punitive damages under 15 U.S.C. Section 1679(g)(a)(3) and under Connecticut General Statutes Section 42-110g;

  e. Awarding punitive treble damages under Connecticut General Statutes Section 52-564;

  f. Imposing a constructive trust on assets of the defendants in favor of the plaintiff to the extent of the defendants' unjust enrichment;

  g. Reasonable attorneys' fees pursuant to 15 U.S.C. Section 1679(g)(a)(3) and Connecticut General Statutes Section 42-110g; and

  h. Granting such other and further relief as the Court deems just and equitable.

Dated:  October 31, 2013

        PLAINTIFF,
        ROBERT ROBITAILLE

        By: */s/ Roberta Napolitano*
        Roberta Napolitano
        Weinstein, Weiner, Ignal, Napolitano & Shapiro, P.C.
        350 Fairfield Avenue
        Bridgeport, Connecticut 06604
        Phone: 203-333-1177
        Fax: 203-384-9832
        rnapolitano@wwinslaw.com