UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Robert Robitaille, Plaintiff,         :      Civil Action No. 3:13-CV-01668-SRU
                           :
vs.                           :
                           :
Swift Rock Financial, Inc. d/b/a or a/k/a  :
World  Law Group, World Law Plan, World :
Law Direct and World Law Debt, Defendant.:    January 31, 2014

**SECOND AMENDED COMPLAINT**

The complaint of Robert Robitaille respectfully alleges:

**INTRODUCTION**

1.    Jurisdiction is conferred on this Court by 28 U.S.C. Section 1331, and supplemental

jurisdiction exists for the state law claims pursuant to 28 U.S.C. Section 1367.

2.    Robert Robitaille is an individual who lives at 974 Broad Street in Stratford, Connecticut.

Mr. Robitaille filed bankruptcy on May 3, 2012.  He listed the claim which is the subject

of this action as an asset of his bankruptcy estate.  The Trustee of his bankruptcy estate

did not administer the claim, and it became Mr. Robitaille's property once his case closed

pursuant to 11 U.S.C. Section 554.

3.    On or before November 17, 2010 and for some time before that, Mr. Robitaille was liable

for credit card balances on debts he incurred primarily for his personal, family or

household use.

4.    From May 2010 through mid-October 2010, Mr. Robitaille took home approximately

$4,766.00 a month.  He was unemployed from mid-October 2010 through mid-November

2010 and received $304.00 a week in unemployment compensation until mid-November

2010.  In mid-November 2010, Mr. Robitaille found a job, and took home approximately

$6,716.67 a month.

5.      Swift Rock Financial, Inc. is a corporation organized and existing under the laws of the state of Texas, with a place of business at 1507 Osprey Ridge Loop, Lago Vista, Texas 78645 ("Swift Rock.")  The address of its agent for service, Roger D. Peugh, is 2201 Donley Drive, Suite 250, Austin, Texas 78758. Swift Rock filed an Assumed Name Certificate with the Secretary of the State of the State of Texas indicating that it did business as World Law Debt.  Upon information and belief, at all times pertinent to the events described in this complaint, Swift Rock also did business as World Law Group, World Law Direct and World Law Plan, and operated from 12655 N. Central Expressway, Suite 1000, Dallas, TX 75243 ("Swift Rock.")  Upon information and belief, Swift Rock was never licensed to do business in the State of Connecticut as a debt adjuster.

6.      At all times mentioned in this complaint, Swift Rock, for or with the expectation of a fee or commission, received money from debtors for the purpose of distributing such money to their creditors in full or partial payment of obligations of the debtors.

7.      At all times mentioned in this complaint, Swift Rock advertised its debt adjustment services on the world wide web, including, upon information and belief, an interactive website.

**Background:**

8.      On or about November 17, 2010, Mr. Robitaille discovered an internet website advertising the defendant's debt adjustment services.  Mr. Robitaille entered his contact information into the defendant's website in order to request contact from the defendant.

2

9.     On November 17, 2010, *exclusive* of his credit card debt, Mr. Robitaille's household expenses were approximately $7,783.00, including a mortgage payment reduced to $2,245.00 per month through his own negotiation with his lender.

10.    On November 17, 2010, and at all times mentioned in this complaint, Mr. Robitaille's unsecured debt exceeded $100,000.00.

11.    On or about November 17, 2010, Mr. Robitaille received an email communication from "Traci with World Law Plan."  It said: "We are **World Law Plan**, Attorney's at Law and we have been successfully and LEGALLY reducing debt for our clients for more than 25 years. Because of our success, we already have relationships with all major US Banks – This means you'll benefit from our experience to settle your accounts for the lowest amount possible."  At the bottom of the email message was the following statement: "*World Law Plan is affiliated with World Law Direct, a worldwide law network of licensed attorneys. For legal advice, expertise and court filings contact your World Law Group Legal Assistant or Attorney.  World Law Plan and any affiliates do not provide tax or investment advice. Individual results may vary.*"

12.    The email address of Traci with World Law Plan is "traci@worldlawplan.com."  The website worldlawplan.com contains the following statements:

   a.     "[C]lient has personally assigned state attorney, 24 hour access to legal advice for our clients, paid and free ask-a-lawyer services."

   b.     "Our attorneys work with you to find the best solution to your individual needs."

   c.     "What happens to my credit?  In our Attorney Debt Negotiation Plan, creditors can report your accounts as late, which will have a damaging effect on your credit

3

score. Once a mutually agreeable renegotiation is reached with each creditor, the creditors will mark the account as "Settled with a zero balance "… "Paid "paid satisfied"….."Paid settled"…Or something similar."

d.      "When should I consider bankruptcy?  Bankruptcy is very serious and will stay with you for the rest of your life. Nothing is as damaging as Bankruptcy and the negative impact on your credit can be overwhelming. Bankruptcy is for consumers who are in serious financial hardship and for those that generally cannot even save minimal amounts to settle their obligations. Call Now: 1-888-538-3080."

e.      "Can't I negotiate on my own?  The answer is yes. However, it can be very time intensive and involves a lot of paperwork and skilled negotiating efforts. Our company has the time, people, processes and systems to get the Attorney Debt Negotiation process started and completed for each of our enrolled clients."

f.      "The 2010 FTC Debt Settlement Regulations and TSR Amendments has left many legitimate debt settlement owners with few choices to consider. These laws are very clear and straight forward, which is why partnering with just any service may lead to both state and federal charges most owners cannot afford.  World Law offers qualified debt settlement businesses an opportunity to finally get their services compliant."

13.     On or about January 10, 2011, the plaintiff, Robert Robitaille, entered into a "Client Service Agreement" (the "Agreement"). A copy of the Agreement is attached to this Complaint.

14.     Section 1 of the Agreement identifies Mr. Robitaille as "CLIENT."

15.    Section 2 of the Agreement states that "the subject matter of the representation is for World Law Group to provide bundled legal services as described in Section 4 and to assist in resolving the debts of CLIENT."

16.    Section 4 of the Agreement, titled "**Initial Bundled Services Responsibility of World Law Group**," states "Attorney will provide the following bundled services during the first 30 days of enrollment; contract review, insolvency analysis, pre-bankruptcy screening and analysis, asset information collection and preservation analysis, asset information collection and preservation analysis, Fair Debt Collection Practices Act education course and collection of violation incidents, litigation preparedness program including evaluation of effective creditor collection options, and access to World Law Groups (*sic*) library of legal forms and information."

17.    Section 5 of the Agreement states "The Law Firm will contact the client monthly to review and determine whether any material changes in clients income or expense, asset information, creditor contact, collection review and/or any other needs the client may have that may be directed through World Law Groups library of legal forms and information."  The Agreement does not define the capitalized term, the "Law Firm."

18.    The capitalized word "Attorney" is not defined in the Agreement.

19.    Section 6 of the Agreement states: "**Responsibilities of WORLD LAW GROUP**: World Law Group will provide debt negotiations (*sic*) and settlement services on behalf of CLIENT."

20.    Section 7 of the Agreement states: "CLIENT shall be assigned a local attorney, who is in good standing with the State Bar where CLIENT is located, that will provide CLIENT

5

with appropriate legal advice through representation.  This AGREEMENT includes the legal services identified in Sections 4 and 5, and legal advice regarding the negotiation and representation for debts properly enrolled and identified on page 10 of this AGREEMENT, or for debts specified in Section 2, between World Law Group and CLIENT. The local attorney will review CLIENT'S case files, consult with CLIENT, explain to CLIENT their options if served or threatened with a lawsuit, and assist with filing an answer to any debt collection lawsuit filed against CLIENT. The local attorney will also advise CLIENT with regards to state and/or federal debt collection laws."

21. Section 8 of the Agreement states "This AGREEMENT does not include a personal appearance in a Court proceeding by Attorney or appearance as 'attorney of record' in any Court proceeding."

22. Section 10 of the Agreement states "Attorney will provide, through the Law Firm's Processing Division, certain non-legal processing duties required under this AGREEMENT, including certain client services, performing accounting, clerical work, and negotiating settlements.  WORLD LAW GROUP's processing division is WORLD LAW PLAN. WORLD LAW PLAN provides certain debt settlement services for clients of WORLD LAW GROUP. WORLD LAW PLAN shall have the same responsibilities under this AGREEMENT as WORLD LAW GROUP. The mailing address for WORLD LAW PLAN is 12655 N. Central Expressway, Suite 800, Dallas, Texas 75243."

23. Section 13 of the Agreement states "Attorney charges a set fee for total bundled legal services as described in Section 4. The calculation of this fee is set out in Schedule A long with the schedule of payments to collect that fee.  There is a onetime Attorney

6

Retainer Fee of $199 that is included in the schedule A. Initial bundled service fees are program fees and earned within the first 30 days. Client however is not obligated to pay the entire amount within the first 30 days but permitted to pay those fees over the time period indicated in schedule A."

24.     Section 14 of the Agreement states: "Attorney charges a monthly service, monitoring, data collection and record upkeep fee of $84.95 per month and a $9.45 account service fee charged by Global Client Solutions for the maintenance of the Client's Special Purpose Account."

25.     Section 15 of the Agreement states: "Attorney charges a flat fee for legal services per negotiated account. The calculation for this fee is set out in Schedule A and is based on the anticipated enrolled debt. This fee shall be earned whenever an enrolled account is settled pursuant to Sections 11 and 12 above. The fee taken shall be a prorated amount of the total legal fees based on a proportional amount of the enrolled debt as described in Section 2."

26.     Section 16 of the Agreement states: "All fees are deemed legal fees and earned if and when received consistent with this contract. No money is kept in escrow and no legal fee is paid in advance."

27.     Section 18 of the Agreement provides that "CLIENT has engaged Attorney for the purpose of evaluating all legal options in resolving CLIENT'S insolvency."

28.     No "Schedule A" was attached to the Agreement.

29.     Attached to, and incorporated into, the Agreement was an "Acknowledgment of Cancellation Effect," which contained a jurat and stated, in paragraph 2, a purported

7

acknowledgment that "all my creditors are released from their obligations to abide by the Cease and Desist letters that were prepared on my behalf by World Law Group and that their pursuit of me for debt collection purposes is acceptable to me."

30.    Also on or about January 10, 2011, the plaintiff executed an agreement with Global Client Solutions, LLC (the "Special Purpose Account Agreement.")

31.    The second paragraph of the Special Purpose Account Agreement states that "In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program.  Your Account is an FDIC-insured sub-account within a master custodial account maintained at a bank designated or selected by Global.  Additionally, you authorize Global to transfer your account to another FDIC insured institution under the existing terms."  Account is defined as "your Special Purpose Account." Global is defined as Global Client Solutions, LLC.

32.    Mr. Robitaille authorized Global to debit the sum of $1010.12 per month from his checking account on the thirtieth day of each month, and to transfer that sum to the Special Purpose Account.

33.    On or about January 10, 2011, and continuing until the present time, Mr. Robitaille did not have disposable income of $1010.12, and, in fact, Mr. Robitaille's expenses exceed his income.

34.    The defendant did not provide individualized credit counseling and budgeting assistance to Mr. Robitaille without charge before it entered into the Agreement with him.

35.    The defendant could not possibly have determined that Mr. Robitaille had the financial

ability to make the payments stated in the Agreement and that the payments stated in the Agreement were suitable for Mr. Robitaille.

36.    A special purpose account is generally one over which the depositor has only limited dominion and control. The deposit is usually made with special restrictions or limitations agreed upon between the bank and depositor.

37.    On or about January 10, 2011, the defendant forwarded a "World Law Plan Welcome Kit" (the "Welcome Kit") to Mr. Robitaille.

38.    The Welcome Kit stated that "our Settlement Advisers are highly trained professionals."

39.    The Welcome Kit stated that Settlement Advisers are "very well trained."

40.    The Welcome Kit stated that "World Law Plan knows the law."

41.    The Welcome Kit advised Mr. Robitaille to "Rely on our experience and expertise and trust that we have your best interest at heart."

42.    One of the frequently asked questions in the Welcome Kit was: "Do I continue making payments to my creditors?"  The response was: "As long as your account remains current, your creditors will have no incentive to settle for less than the full amount."  Upon information and belief, the defendant could not possibly have contacted each of Mr. Robitaille's creditors to determine whether they would accept payment as contemplated by the Agreement if the Welcome Kit included this advice.

43.    Between November 30, 2011 and February 28, 2012, the sum of $11,394.52 was removed from Mr. Robitaille's checking account and transferred to the Special Purpose Account.

44.    No payments were made to Mr. Robitaille's creditors from the Special Purpose Account.

45.    By email, on March 9, 2012, Mr. Robitaille requested the return of the funds he deposited

with the defendant.

46.   The defendant forwarded $2971.56 to the plaintiff, but informed him that a full refund required "board approval," and that the board meeting would take place on March 28, 2012.

47.   The defendant did not return the remaining funds.

48.   The fees the defendant charged were unconscionable.

49.   The fees the defendant charged were not reasonable.

50.   Many of the statements and representations the defendant made were false.

51.   The actions of the defendant described herein, the Agreement and the Special Purpose Agreement offend public policy.

52.   At the time he entered into the Agreement and the Special Purpose Agreement, Mr. Robitaille, in light of his dire financial condition and the representations the defendant made, had no meaningful choice but to enter into the Agreement and the Special Purpose Agreement, the terms of which were unreasonably favorable to the defendant.

53.   The defendant did not alert Mr. Robitaille to the arbitration provisions of the Special Purpose Agreement.

54.   The Agreement is voidable by Mr. Robitaille.

### COUNT I (Fraudulent Misrepresentation)

55.   The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 54 hereof, as if fully restated herein.  The defendant, through its website, Agreement, Special Purpose Account Agreement and Welcome Kit, represented that:

a.      It would give legal advice to the plaintiff;

     b.      It was qualified to give legal advice to the plaintiff;

     c.      Entering into a debt consolidation plan with the defendant would benefit Mr.

              Robitaille more than a bankruptcy filing;

     d.      Mr. Robitaille could not obtain the same or better results in compromising his

              debts by negotiating with his creditors on his own than by entering into the

              Agreement and Special Purpose Account Agreement;

     e.      Entering into the Agreement and Special Purpose Account Agreement and abiding

              by their terms would produce a better credit score for Mr. Robitaille than a

              bankruptcy filing; and

     f.      Mr. Robitaille could successfully complete a program which required him to pay

              them more than a thousand dollars a month even though payment of that sum

              would not allow him to meet his living expenses.

56.    At the time the defendant made these representations, they were untrue and the defendant

       knew they were untrue.

57.    The defendant made these representations in order to induce Mr. Robitaille to enter into

       the Agreement and Special Purpose Account Agreement.

58.    Mr. Robitaille entered into the Agreement and Special Purpose Account Agreement based

       on the defendant's misrepresentations.

59.    As a result of the defendant's misrepresentations and his execution of the Agreement and

       Special Purpose Account Agreement, Mr. Robitaille sustained the following damages:

     a.      He paid $11,394.52 to the defendant, and received nothing in return; and

     b.      He did not file bankruptcy for more than a year after he entered into the

Agreement and Special Purpose Account Agreement, delaying the repair of his

credit for more than fifteen months.

### COUNT II (Negligent Misrepresentation)

60.    The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 59

hereof, as if fully restated herein.  The defendant, through its website, Agreement, Special

Purpose Account Agreement and Welcome Kit, which it operated and/or disseminated in

the course of its business, represented that:

a.    It would give legal advice to the plaintiff;

b.    It was qualified to give legal advice to the plaintiff;

c.    Entering into a debt consolidation plan with the defendant would benefit Mr.
Robitaille more than a bankruptcy filing;

d.    Mr. Robitaille could not obtain the same or better results in compromising his
debts by negotiating with his creditors on his own than by entering into the
Agreement and Special Purpose Account Agreement;

e.    Entering into the Agreement and Special Purpose Account Agreement and abiding
by its terms would produce a better credit score for Mr. Robitaille than a
bankruptcy filing; and

f.    Mr. Robitaille could successfully complete a program which required him to pay
them more than a thousand dollars a month even though payment of that sum
would not allow him to meet his living expenses.

61.    At the time the defendant made these representations, it knew, or should have known,

they were untrue.

62.     The defendant made these representations in order to induce Mr. Robitaille to enter into the Agreement and Special Purpose Account Agreement.

63.     The defendant failed to exercise reasonable care or competence in obtaining or communicating the information on their website, in the Agreement, Special Purpose Account Agreement, and in the Welcome Kit to Mr. Robitaille and others.

64.     Mr. Robitaille entered into the Agreement and Special Purpose Account Agreement based on the defendant's misrepresentations.

65.     As a result of the defendant's misrepresentations and his execution of the Agreement and Special Purpose Account Agreement, Mr. Robitaille sustained the following damages:

   a.     He paid $11,394.52 to the defendant, and received nothing in return; and

   b.     He did not file bankruptcy for more than a year after he entered into the Agreement and Special Purpose Account Agreement, delaying the repair of his credit for more than fifteen months.

## COUNT III (Unconscionability)

66.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 66 hereof, as if fully restated herein.  The Court should find, as a matter of law, that the terms of the Special Purpose Account Agreement and Special Purpose Account Agreement were substantively and procedurally unconscionable at the time they were made, and refuse to enforce any part of the Agreements that require arbitration of the plaintiff's claims herein.

## COUNT IV (Violation of Credit Repair Organizations Act)

67.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 66

13

hereof, as if fully restated herein.  The defendant is a credit repair organization as defined by 15 U.S.C. Section 1679a.

68.     The plaintiff is an individual and a "consumer" as defined by 15 U.S.C. Section 1679a.

69.     The defendant was an entity engaged in interstate commerce to sell, provide and perform credit repair services within the meaning of the Credit Repair Organizations Act. Specifically, the defendant used emails and websites to market its services and to promise to reduce consumers' debt loads and improve their credit scores.

70.     The defendant made or used untrue and misleading misrepresentations about its services.

71.     The defendant engaged, directly or indirectly, in acts, practices, and courses of business that constituted or resulted in the commission of, or attempts to commit, a fraud or deception in connection with the offer or sale of its services.

72.     As a result of the acts, practices and omissions of the defendant, Mr. Robitaille has suffered damages, including, but not limited to, payments to the defendant, and a delay in the repair of his credit.

**COUNT V (Conversion)**

73.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 72 hereof, as if fully restated herein.  The defendant wrongfully retained the plaintiff's property, wrongfully refusing to deliver it to him after he demanded its return.

74.     As a result of the defendant's refusal to return his property, the plaintiff has suffered damages.

**COUNT VI (Statutory Theft under C.G.S. Section 52-564)**

75.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 74

14

hereof, as if fully restated herein.  By failing to return the funds he delivered to them, the defendant has stolen the property of the plaintiff.

76.   As a result of the defendant's theft of the plaintiff's money, the plaintiff suffered damages.

## COUNT VII (Unjust Enrichment)

77.   The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 76 hereof, as if fully restated herein.  The defendant benefitted from its wrongful retention of the plaintiff's payments to them.

78.   The defendant unjustly failed to provide any benefit to the plaintiff in return for his payments to them.

79.   As a result of the defendant's retention of the plaintiff's payments, he suffered damages.

## COUNT V (Violation of Connecticut Unfair Trade Practices Act-
## Connecticut General Statutes Section 42-110a *et seq.*)

80.   The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 79 hereof, as if fully restated herein.  At the time the Agreement and the Special Purpose Account Agreement were executed, the defendant was engaged in the business of "credit counseling."

81.   The actions of the defendant as described herein offend public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to the plaintiff.

82.   The defendant knew or should have known that there was no reasonable possibility that Mr. Robitaille, and others like him, could repay even a small portion of his unsecured debt.

83. At no time did the defendant or its website inform clients of the potential adverse tax effects of "forgiveness of debt," falsely promising full satisfaction reports to its clients.

84. Upon information and belief, the defendant profits from the failure of its clients to make payments under its scheme, and its business model is an attempt to make the financially vulnerable its prey.

85. The actions of the defendant as described herein violated 16 CFR 310, which provides that a credit counseling agency may not take a fee for any services it performed unless it is proportional to the amount paid to its clients' creditors.

86. The defendant has retained $11,394.52. It paid nothing to Mr. Robitaille's creditors.

87. The actions of the defendant described herein violated 16 CFR 310 because it is clear that, in spite of its requirements, Mr. Robitaille did not own the funds deposited with the defendant and that he could not withdraw the funds at any time without penalty.

88. Mr. Robitaille suffered ascertainable losses as a result of the violations of the Connecticut Unfair Trade Practices Act by the defendant, in that he turned over $11,394.52 to the defendant for which he received nothing in return.

**COUNT V (Violation of Connecticut General Statutes Section 36a-655 *et seq.*)**

89. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 88 hereof, as if fully restated herein.

90. The plaintiff elects to void the Agreement under Connecticut General Statutes Section 36a-661a because the defendant took payments to which the plaintiff did not agree, and because the defendant was not a licensed debt adjuster as required by Sections 36a-655 through 36a-665, inclusive.

WHEREFORE, the plaintiff requests that this Court enter judgment in his favor and against the defendant as follows:

a.  Declaring that the Agreement and Special Purpose Account Agreement are procedurally and substantively unconscionable, and declaring the Agreement and Special Purpose Account Agreement invalid and unenforceable;

b.  Declaring that the representations made enticing Mr. Robitaille to enter into the Agreement and Special Purpose Account Agreement offend public policy, were immoral, unethical, oppressive, and unscrupulous in violation of Connecticut General Statutes Section 42-110a et seq., that the terms of the Agreement and Special Purpose Account Agreement offend public policy, were immoral, unethical, oppressive, and unscrupulous in violation of Connecticut General Statutes Section 42-110a et seq., and declaring the Agreement and Special Purpose Account Agreement invalid and unenforceable;

c.  Awarding damages under 15 U.S.C. Section 1679(g)(a)(3) and under Connecticut General Statutes Section 42-110g;

d.  Awarding punitive damages under 15 U.S.C. Section 1679(g)(a)(3) and under Connecticut General Statutes Section 42-110g;

e.  Awarding punitive treble damages under Connecticut General Statutes Section 52-564;

f.  Imposing a constructive trust on assets of the defendant in favor of the plaintiff to the extent of the defendant's unjust enrichment;

g.  Allowing reasonable attorneys' fees pursuant to 15 U.S.C. Section 1679(g)(a)(3)

17

and  Connecticut General Statutes Section 42-110g;

h.      Declaring the Agreement void pursuant to Connecticut General Statutes Section 36a-665; and

i.      Granting such other and further relief as the Court deems just and equitable.

Dated: January 31, 2014

PLAINTIFF,
ROBERT ROBITAILLE

By: */s/ Roberta Napolitano*
Roberta Napolitano
Weinstein, Weiner, Ignal, Napolitano & Shapiro, P.C.
350 Fairfield Avenue
Bridgeport, Connecticut 06604
Phone: 203-333-1177
Fax: 203-384-9832
rnapolitano@wwinslaw.com

18

# W%RLDLAW
## G R O li P

## CLIENT SERVICE AGREEMENT

1. Parties and Effective Date of Agreement: This AGREEMENT is made on _____ BetWeen ROBERT ROBITAILI (hereinafter referred to as "CLIENT" even if more than one) and World Law Group (hereinafter referred to as "World Law Group"). CLIENT acknowledges that several members of the World Law Group staff or other independent contractors may assist in handling this matter. CLIENT further acknowledges that all obligations of the attorney herein rt;lay be executed by the assigned Attorney, World Law Group staff, or duly authorized Independent' contractors as law permits.

2. Subject Matter of Agreement: The subject matter of the representation is for World Law Group to provide bundled legal services as described in Section 4 and to assist in resolving the debts of CLIENT as may be described in Page 3 of this AGREEMENT or as subsequently determined between World Law Group and CLIENT.

3. Responsibilities of CLIENT: CLIENT agrees to be truthful and cooperative; to promptly notify Attorney of any phone number or address changes; to fill out and return any and all papers and questlonnalres supplied by Attorney within FIVE (5) DAYS; and to reasonably consider recommendati6ns made by Attorney regarding any legal counsel. CLIENT expressly agrees to make timely payments for services rendered and to reimburse World Law Group for all fees earned per Sections 13,14,15, and 16 of this AGREEMENT. CLIENT is required to provide Attorney with 5:busip~ice regarding any debit date change requests. Additionally, upon receipt Of~y lawsuitvCLIENT will be required to immediately contact Attorney and provide a copy orthe--faWSuit, and actively participate in the defense of any lawsuit or claim made against CLIENT by any cr~djto( or subsequent collection agency listed in this ~~!E!ement.

-Z

4. Initial Bundled SerVices Responsibility of World Law Group: Attorney will provide the following bundled services during the first 30 days of enrollment; contract review, insolvency analysis, pre-bankruptcy screening and analysis, asset information collection and preservation analysis, Fair Debt Collection Practices Act education course and collection of violation incidents, litigation preparedness program including evaluation of effective creditor collection options, and access to World Law Groups library of legal forms and information.

5. On-going Monthly Responsibilities of World Law Group: The Law Firm will contact the client monthly to review and determine whether any material changes in clients income or expense, asset information, creditor contact, collection review and/or any other needs the client may have that may be directed through World Law Groups library of legal forms and information.

6. Responsibilities of 'WORLD LAW GROUP: World Law Group will provide debt negotiations and settlement services on behalf of CLIENT. World Law Group has a duty to maintain the confidences and secrets of CLIENT, as normally understood under Attorney-Client Privilege as defined by statute and State Bar Associations where this AGREEMENT is in force. World Law Group will promptly and efficiently perform the duties described in this AGREEMENT and will keep CLIENT reasonably informed of progress in the pursuit of this agreement's objectives, and will respond promptly to CLIENT'S inquiries and communications. For purposes of prompt responses to inquiries and communications, CUENT agrees to maintain a properly functioning email address at all times, and regularly monitor and review all email transmissions.

Client Initial:
Confidential

**7. Clarification of Representation:** CLIENT expressly acknowledges that World Law Group does not provide tax or investment advice. CLIENT shall be ~ssigned a local attorney, who is in good standing with the state Bar where CLIENT~ locate~, that will provide CLIENT with appropriate legal advice throughout representation. ThIS AGREEMENT includes the legal services identified in Sections 4 and 5, and le~al a~vice regarding the negotiation and representation for debts properly enrolled and Identified on page 10 of this AGREEMENT or for debts specified in ~ection 2.' between Wo:ld Law Group and CLIENT. The local attorney will review CUENT5 case ~lles, consu.lt with CLIENT, explain to CLIENT their options if served or threatened with a lawsuit, and assist with filing an answer to any debt collection lawsuit filed against CLIENT. The local attorney will also advise CLIENT with regards to state and/or federal debt collection laws.

**8. Not Included in Legal Representation:** This AGREEMENT does not include a personal appearance in a Court proceeding by Attorney or appearance as "attorney of record" in any Court proceeding. This AGREEMENT does not include litigation costs and does not cover any appeal in which CLIENT is an appellant or respondent arising from the original representation. Court costs, litigation costs, travel costs etc. --, if any, are not included in representation. CLIENT is responsible for reimbursing associated pre- approved costs to the local attorney as they are incurred. CLIENT understands that the failure to reimburse these amounts within fourteen (14) days may result in the withdrawal of the local attorney and the termination of *this* AGREEMENT. This Agreement does not provide representation in the preparation, filing and appearance by Attorney *in* any bankruptcy proceeding. CLIENT agrees that the Attorney has not represented that it will advise or assist CLIENT in the modification, improvement or correction of credit entries on CLIENT'S credit reports or that Attorney can stop all collection phone calls or correspondence.

**9. Additional Services:** Upon request, the Local Attorney will provide CLIENT with a list of additional services which CLIENT may request at an additional charge.

**ro, Servicing Entity:** Attorney will provide, through the Law Firm's Processing Division certain non-legal processing duties required under this AGREEMENT including certain client services p~l}~rm~ng accountinq, clerical work, and negotiating settlements. WORLD LAW GROUP'S pro'cessing dl:"lslon is WORLD LAW PLAN. WORLD LAW PLAN provides certain debt settlement services for clients of WORLD LAW GROUP. WORLD LAW PLAN shall have the same responsibilities under this AGREEMENT as WORLD LAW GROUP. The mailing address for WORLD LAW PLAN is 12655 N. Central Expressway Suite 800, Dallas, Texas 75243. The toll free phone number is 888-538-5868.

**11~ Settlements:** Attorney will engage in the debt settlement process early by sending a Notice of Representation with conditional 10-20% offer to creditors. CLIENT understands that t~ese offers ar.e~ot intended in any way to create an expectation that each and every creditor WIll settle ~herr mdebtedness for 10-20%. The sole purpose of these *offers* is to pursue settlement 10 the ~ossibili~. that the CLIENT could pay this amount and still continue the plan With respect to their remammg debts.

Client Initial:
Confidential

Except as indicated below, Attorney will not settle CLIENT'S Claim without the approval of the CLIENT, who possesses the absolute right to accept or reject any settlement offer subject to the exception set out below. Attorney will inform the CLIENT of the amount, and the terms and conditions of all reasonable written settlement offers received, upon which the client has indicated a preparedness to act. CLIENT will notify Attorney IN WRITING by mail or facsimile to begin settling debts by providing the name of account to be offered, the account number, the amount to be settled, the amount and/or percentage to be offered, and the date(s) the funds are available to disburse to the creditor. CLIENT hereby approves implied right of settlement authorization to Attorney from available funds in CLIENT'S Special Purpose Account if that settlement is less than 40% of the original debt CUENT had at the time of this Agreement, either by specific account or an aggregate of all accounts.

12. Self Settlement: Attorney hereby advises CLIENT not to resolve their debts directly with creditors. By engaging representation through Attorney's, the CLIENT, through the law office demonstrates to creditors a willingness to aggressively resolve their debts. As a result, in an *effort* to circumvent Attorney's expertise in negotiation, creditors may attempt to resolve CLIENT'S debts directly with CLIENT. CUENT should understand that, such opportunity is a direct result of CLIENT'S representation by World Law Group. Direct settlement with creditors by CLIENT is rarely in CLIENT'S best interest. In fact, pursuing direct settlement may cause CLIENT'S estimated program cost to increase. CLIENT further agrees that should they self-settle any account they authorize World Law Group to take payment from funds available in the CUENT's SpeCial Purpose Account as permitted by the fee provisions herein.

13. Legal Fees for Bundled Services. Attorney charges a set fee for total bundled legal services as described in' Section 4. The calculation of this fee is set out in Schedule A along with the schedule of payments to collect that fee. There is a onetime Attorney Retainer Fee of $199 that is included In|the schedule A. Initial bundled service fees are program fees and earned within the first 30 days. Client however is not obligated to pay the entire amount within the first 30 days but permitted to pay those fees over the time period indicated in schedule A.

14. On-Going Monthly Attorney Evaluation Fees. Attorney charges a monthly service, monltortnq, data collection and record upkeep fee of $84.95 per month and a $9.45 account service fee charged by Global Client Solutions for the maintenance of the Client's Special Purpose Account.

15. Legal Fees for Debt Settlement. Attorney charges a flat fee for legal services per negotiated account. The calculation for this fee is set out in schedule A and is based on the anticipated enrolled debt. This fee shall be earned whenever an enrolled account is settled pursuant to Sections 11 and 12 above. The fee taken shall be a prorated amount of the total legal fees based on a proportional amount of the enrolled debt as described in Section 2.

16. Earned Fees. All fees are deemed legal fees and earned if and when received consistent with this contract. No money is kept in escrow and no legal fee is paid in advance.

17. Disclaimer of Guarantee: Although Attorney, World Law Group, World Law Plan, or their duly authorized contractors may give an opinion about possible results, by signi.ng this AGREEMENT, CLIENT acknowledges that the Attorney, World Law Group Staff or their contractors has made no guarantees or predictions about the outcome of its services, or the time frame required to complete the contracted services; except that Attorney shall provide its best *efforts* to complete the contracted services within the term of the contract. CLIENT acknowledges that each case is unique and individual results may vary.

Client Initial:

### IMPORTANT  INFORMATION  FOR  YOU TO CONSIDER

~Client understands  and acknowledges that  contracted  credit  accounts may continue  to
accrue  interest  and fees until  the  accounts are settled.

~Client also understands  and acknowledges that creditors  may impose  other penalties as
a result  of non-payment,  including but not limited to, the reporting  of adverse
lnformatlonto   credit  reporting  agencies and/or  the  filing of a lawsuit  to collect
money if the creditor  is unwilling  to accept  a settlement  offer or if the client is
unable  to propose  a settlement  offer acceptable  to the creditor.

~Client acknowledges  that  the forgiveness  of a debt by a creditor  could result in a
taxable  income,  even though  client will not actually  receive  any money.  If this
occurs, client should seek the advice  of a tax professional.


18.  CLIENT Intent:   CLIENT, independently  of Attorney,  has discontinued  or decided to
discontinue  payments  to creditors  and to seek assistance in resolving the specified
outstanding  creditor  claims through  this program.  CLIENT has engaged Attorney  for the
purpose of evaluating  all legal options in resolving CliENT's insolvency. CliENT further
intends,  by this agreement,  to create a confidential  relationship  with Attorney  in regard to
resolving  the outstanding  creditor  claims specified in this agreement.

19.  CLIENT Payments  to Creditors:   CLIENT agrees to a Savings budget as outlined  in
Schedule A (Legal Program Fee Schedule).  These funds  are budgeted for ultimate
distribution  to creditors,  and will be budgeted until  all contracted  creditor  accounts are
settled  in full.  CLIENT will make all settlement  payments  directly to creditors from
CLIENT's Special Purposes Account,  unless CUENT and Attorney  have agreed to other
arrangements.  CliENT fully  authorizes  that  if and when a settlement  is reached that
Attorney  may direct  the appropriate  fees be paid contemporaneously  with the settlement
from  the CUENT's Special  Purpose Account.

20. Discharge or Withdrawal:  Attorney  may discharge CLIENT by written  notice, effective  when
received  by the discharged  party.   CLIENT may withdraw  from  representation  at any time,  but must
do so by completion  of "Notice of Cancellation" and "Acknowledgment  of Cancellation Effects",  which
are included in this Client Service Agreement.   Attorney  will in all cases honor an email, facsimile,  or
other  written  transmission  not in the form  of the "Notice of Cancellation" and "Acknowledgement  of
Cancellation  Effects",  which  clearly indicates an intention  to cancel, so long as it is actually  received,
by placing CLIENT's account  on hold. During  this time all legal services provided by Attorney  will be
suspended.  The above-named  Cancellation  documents  must  be received  by Attorney,  otherwise
~_eyentualdischarge will occur after  14 business days. Cancellation documents  must be received by
Attorney  a minimum  of-five  (5) days prior to the next  payment  due to stop the debiting  process.


Client  Initial:

21. Arbitration of Dispute.

a. If there is any dispute between the parties arising out of this agreement, the parties agree to submit that dispute to binding arbitration under the auspices of the American Arbitration Association (AM). If such arbitration is held under the auspices of any other organization, the arbitration will be held in accord with AAA rules to the extent possible. In any *event, venue* for such arbitration will be in New York, New York.

b. Binding Arbitration means that both parties give up the right to a trial by a jUry. It also means that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed under New York law. It also means that discovery may be severely limited by the arbitrator.

c. Choice of Law and Jurisdiction. In the event of any dispute regarding the representation, including service fees and costs, CUENT and Attorney Model agree that venue of resolution shall be in New York, New York. Both Attorney and CLIENT agree that the laws of the state of New York shall govern any disputes arising from the contract.

22. Effect of Any Determined Unenforceable. Should a Court, tribunal or any lawful authority with appropriate jurisdiction determine that any provision in this AGREEMENT is unenforceable, void or voidable the remaining provisions shall remain in full force and effect.

23. Privacy Policy: Attorney is committed to providing the highest level of security and privacy regarding the collection and use of your personal information. Only approved personnel will have access to your personal information. Furthermore, auditing mechanisms have been put in place to further protect your information by identifying personnel who may have accessed and in any way added, updated or modified your personal information.

This Client Service Agreement constitutes the full and complete agreement between CUENT and Attorney Model. This Agreement supersedes any and a" other agreements or understandings, whether written or oral, for the matter described in Paragraph Two. I verify that I have read, understand and agree with the above Service Agreement and have been provided a copy for my personal records.

Signature:

Printed Name: ROBERT ROBITAILLE

Dated:

Confidentiai



## WORLD LAW GROUP NOTICE OF CANCELLATION

Three Day Right of Rescission:

    CLIENT may rescind this AGREEMENT, for any reason, without any penalty or obligation, within three (3) days after the date indicated on page 5 of the AGREEMENT.

Rescission shall be effective only if the client executes this Notice of Cancellation and Acknowledgment of Cancellation

Effects signed before a notary within three (3) days of signing and returning the AGREEMENT.

Additionally, for a rescission to be effective the Notice of Cancellation and the Acknowledgment of Cancellation Effects must be returned to World Law Group offices by certified mail within ten (10) days of signing and returning the AGREEMENT. If CLIENT rescinds AGREEMENT within said three day time period, any prior payment made by CLIENT will be returned within ten (10) days of receipt of said notice by World Law Group.

Cancellation, Termination or Withdrawal:

    CLIENT may terminate, withdraw or otherwise cancel this agreement for any reason at any time, subject to the provisions of the AGREEMENT, which might be in effect and also subject to any other settlement agreements subsequently agreed to by CLIENT with any creditor, collection agency or other holder of any CLIENT account Any CLIENT FEES received but as yet unearned as described in the AGREEMENT, at the time of termination or withdrawal shall be refunded to the CLIENT.

NOTICE:

    Cancellation shall be effective only if CLIENT executes this Notice of Cancellation and Acknowledgment of Cancellation .

Effects (p.I l) signed before a notary and returned to World Law Group by certified mail return receipt requested. To make rescission or cancellation effective, CLIENT must sign this document below and execute the Acknowledgment of Cancellation Effects attached. The Acknowledgment of Cancellation Effects must be signed before a notary public.

I hereby cancel this AGREEMENT.

CLIENT SIGNATURE                              DATE

This "Notice of Cancellation" is only of full force and effect when accompanied by the client's completion of the attached *"Acknowledgment-of Cancellation Effects" document"*

If you do decide to cancel this AGREEMENT, within three (3) days, please make a copy of this "Notice of Cancellation" and retain it for your records.

Confidential



# W~RLDLAW
## G R 0 *V* P

## *ACKNOWLEDGEMENT   OF CANCELLATION  EFFECT*

As a result  of my action  in terminating   from the World  Law  Group  debt settlement
program,  I hereby  also acknowledge  by my signature  below  the  following:

1)  That all rights  and responsibilities  entailed  under  the  provisions  of my signed  Power of Attorney
    authorizations  to World law  Group are now and forevermore  revoked.

2)  That all my creditors  are released  from their  obligation  to abide  by the Cease and Desist  letters that
    were  prepared  on my behalf  by World Law Group and that  their  pursuit  of me for debt collection
    purposes  is acceptable  to me.

3)  That' will no longer forward  creditor correspondence  or have forwarded  creditor correspondence  to
    World law Group. Any creditor  correspondence  lost or otherwise  unaccounted  for after the  date of
    my cancellation will not be the  responsibility  of World Law Group.

4)  That World law Group has my consent  and authorization  to notify each  and all of my creditors  of
    my cancellation  action.

Signature                              ____

Printed  Name

Dated:                  __...:..        _

STATE OF:                        _

COUNTY  OF:                        _

SUBSCRIBED  AND SWORN  TO BEFORE  ME, a Notary  Public  witbin  and

for the aforesaid County  and State, this          day of              _' 20__

My commission expires:                        _


Notary  Public                              Seal

DocuSign Envelope 10: 115DF4E8-A43A-4A20-B96-8A55FB611-001



# W%RLDLAW
### G R O li P

# CLIENT INFORMATION AUTHORIZATION

I hereby grant World Law Group this authorization to request, receive and discuss any and all account information with my creditors on my behalf. This may include but not be limited to negotiating payment terms and conditions, settlements, extensions and/or deferments of my accounts. In addition, I authorize the review of my financial situation with my creditors and I agree to indemnify and hold World Law Group harmless of any loss, liability or damage by any reason thereof. I further authorize World Law Group to verify any information deemed necessary. It is understood that a copy of this form will also serve as authorization.

By signing this authorization, I hereby acknowledge that I have read the World Law Group Client Services Agreement and accept and consent to all the terms set forth in the Agreement.

Signature:

Printed Name: ROBERT ROBITAILLE

Dated:

Confidential

# SPECIAL PURPOSE ACCOUNT AGREEMENT

This Special Purpose Account Agreement and Application (this ..Agreement') contains the terms, conditions, and disclosures that apply to your Special Purpose Account (your "Account"). By signing the application for your Account (you're "Account Application") and using your Account, you agree that this Agreement shall apply; and you agree to abide by all of the terms, conditions, and rules set forth herein. If you have questions that you do not believe are addressed in this Agreement, you can and should call, e-mail, or write Global Client Solutions, LLC ("Global") at the number or address shown at the end of this Agreement Please review this document carefully and keep it with your other important records. In this Agreement, the words, "I", "me", "mine", "my", "you' and "your" mean you and any other party who you authorize to use your Account

Purpose, Nature and Use of the Account: Your Account is a special purpose account that you can use in connection with the debt settlement program you have undertaken. In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program. Your Account is an FDIC-insured sub-account within a master custodial account maintained at a bank designated or selected by Global, Additionally, you authorize Global to transfer your account to another FDIC insured institution under the existing terms. Global will provide written notice to you of such change. Unless you have otherwise provided, you are the only one that has the right to authorize the transactions relating to your Account; and you may withdraw funds from your Account and/or dose it at any time in the manner provided for below. Your Account may not be used for any illegal purpose.

Passcodes / Passwords: You will be provided with a four-digit passcode (your 'Passcode') that you will use to access your Account via the telephone and to identify yourself when contacting a customer service representative. You will also be provided with an initial Internet password (your "Password") that you will use to access your Account via the Internet You may change your Password from time to time for security purposes and you are encouraged to do so. You are responsible for the protection and use of your Passcode and Password. Do not disclose your Passcode or Password to anyone who does not have your permission to access your Account

Telephonic / Electronic Communications: You authorize Global to accept and act upon any agreement or instruction received from you or authorized by you, concerning your Account where you have communicated that agreement or instruction by telephone, facsimile, e-mail or other electronic means using a telephone keypad or computer. Use of your passcode, password or any other form of identification designated by you in any transaction constitutes and will be accepted as your electronic signature, as that term is used in the federal Electronic Signature in Global and National Commerce law and other applicable laws.

Authorizing and Initiating Transactions: You have authorized certain transactions to be undertaken in your Account Application. From time to time, you may change those instructions andlor give other instructions to initiate deposits to or disbursements from your Account by using your Password to log into the Global website or by contacting Global customer service. You may also convey instructions through the Sponsor identified on your Account Application, and such instructions may be acted on without further confirmation unless you direct otherwise in writing. In any event, you must always provide a reasonable period of time to act your instructions. All authorized deposits to your account will be initiated pursuant to your instructions from time to time and all authorized disbursements will be made from your Account provided .it contains sufficient ·good" funds to cover the amount of the disbursement However. neither Global, nor any service provider to Global will be responsible for determining when a payment is actually due, nor shall they be responsible for determining whether a payment is for the correct amount or otherwise proper. Their sole obligation in this regard will be to execute your payment instructions in a commercially reasonable manner as soon as practical after receipt of

such instructions; and if they perform in such manner, they shall not be responsible for any late payment fee, penalty or other charge levied by your creditor, for any failure of your creditor to honor a settlement or for any other adverse action taken or not taken by your creditor or any other party.

Fees and Charges: You promise to pay the fees and charges shown in your Account Application: and you agree that these fees and charges may be deducted directly from your Account. The monthly service charge for the first month in which your Account is opened will not be prorated and will be deemed earned on the first day your account is opened. Thereafter, the monthly service charge will be deemed earned in full on the first day of each calendar month during which your Account remains open, Other fees will be deemed earned at the time of the transaction or the event that gives rise to the fee. The fees and charges relating to your Account may be increased for any increase in the associated costs and expenses, in which case you will be provided with at least thirty days prior written notice.

Tennination of Agreement: You may terminate this Agreement and close your Account at any time by sending a written notice to Global customer service. In addition, this Agreement may be terminated and your Account cancelled at any time without notice for inactivity, if your Account is improperly maintained or used. or if you otherwise violate any provision of this Agreement If this Agreement is terminated for any reason, the collected balance in your Account will be sent to you by check within a reasonable period of time.

Default and Collection of Accounts: If your Account is suspended. cancelled or otherwise terminated for any reason and your Account has a negative balance, you agree to pay the negative balance upon demand. Should you fail to remit the full amount of such negative balance, you shall remain responsible for the deficit and collection actions may be pursued against you. If any such collection action is undertaken, you agree to pay all court costs and collection fees, including reasonable attomey's fees, to the extent permitted by applicable law.

Monthly Statements: You will receive a monthly statement showing your Account activity and balance by mail unless you have elected to receive your statement electronically. Additionally, you may obtain balance and transaction information by using your Passcode to access your Account via the telephone, by using your Password to log into the Global website or by calling Global customer service. You agree to carefully ·insped your statement and promptly report any erroneous. improper or unauthorized transactions.

No Interest: No interest will be paid to you on or with respect to your Account

Consumer Liability: If you believe someone has transferred or may transfer money from your Account without your permission, contact Global customer service immediately. Telephoning is the best way to keep your possible losses down.

FDIC Insurance: The funds in your Account will be FDIC insured up to a maximum of $250,000.00 or such lower or higher limit as may be established by the Federal Deposit Insurance Corporation from time to time.

Incomplete Transactions: Neither Global nor any service provider to Global will be liable for failing to complete a transaction if you do not have enough money in your Account to complete the transaction; or if circumstances beyond their control prevent the completion of the transaction, including, without limitation, the acts or omissions of any ACH, check or other processor, the National Automated Clearing House Association, the Federal Reserve System, any bank, or the directive of any regulatory authority.

NITIALS

Error Resolution Procedure: In case of errors or questions about transactions involving your Account, call or write Global customer service no later than sixty *days* after the transaction in question has been reflected on your monthly statement Please provide the following information:

1. Your name and Account number.

2. Date and amount of the transaction.

3. Type of transaction and description of the suspected error. Please explain as clearly as possible why you believe there is an error or why you need additional information.

4. Dollar amount of the suspected error.

If you provide this information orally, you also may be required to also provide it in writing within ten business days. You will be told of the results of the investigation of the suspected error within ten business days after you submit the information and any error will be promptly corrected. However, if more time is required to investigate the suspected error, it may take up to an additional thirty days to complete the investigation. If it is determined that there is no error, you will be provided with a written explanation within three business days of such determination; and you may ask for and receive copies of the documents used in making any such determination.

Creditor Disputes: You agree to settle all disputes about payments made to your creditors from your Account. Global is not a party to your debt setUement plan, and does not participate in the negotiation of your debts. *Accordingly.you hereby expressly acknowledge that ~ Global does not have any involvement in or responsibilities of any nature with respect to your debt settlement plan or the results th<lt you may* Dr*may not achieve from its execution.*

Governing Law: The laws of the State of Oklahoma govern this Agreement If any part of this Agreement is declared void or unenforceable, such provisions shaIl be deemed severed from this Agreement. The remainder of this Agreement shall remain in full force and effect, and shall be modified to any extent necessary to give such force and effect to the remaining provisions. No delay or forbearance in the strict observance or performance of any provision of this Agreement, nor any failure to exercise a right or remedy hereunder. shall be construed as a waiver of such performance, right, or remedy, as the case may be.

ARBITRATION OF DISPUTE

a.In the event of any controversy, claim or dispute between the parties arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the termination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Tulsa County, State of Oklahoma in accordance with the laws of Oklahoma, or in the county in which the consumer resides, in accordance with the Laws of the that state. The parties agree, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its rules and procedures and an arbitrator shall be selected by the AAA. The arbitrator shall be neutral and independent and shall comply with the AAA code of ethics. The award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction over the parties. If either party fails to comply with the arbitrator's award, the injured party may petition the circuit court for enforcement The parties agree that either party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative or class proceeding. The parties shall share the cost of arbitration, including attorneys' fees, equally. If the consumer's share of the cost is greater than $1,000.00 (One-thousand dollars), the company will pay the consumers share of costs in excess of that amount. In the event a party faits to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorneys fee for having to compel arbitration or defend or enforce the award.

Binding Arbitration means that both parties give up the right to a trial by a jury. It also means that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited *by* the arbitrator.

Limitation of Liability: Under no circumstances shall Global ever be liable for any special, incidental, consequential, exemplary or punitive damages.

USA Patriot Act Compliance: In order to assist in combating terrorism and preventing the Global system and the banking system from being used for money laundering purposes, you authorize Global to take those steps that are reasonable and practical to identify you and any information about you, including, without limitation, securing or accessing a credit report on you, obtaining other information about you and otherwise verifying your identity as required by the USA Patriot Act.

PRIVACY POLICY

Personal information *may* be collected from your Account Application, any updated information you may provide from time to time and the transactions processed through your Account A description of the Privacy Policy applicable to your Account is provided below. If you have additional questions regarding the privacy of your personal information, please contact Global customer service.

Collection *I* Use of Personal Information: Collection of your personal information is designed to protect access to your Account and to assist in providing you with the products and services you have requested. All personal information collected and stored by Global. or on their behalf, is used for specific business purposes to protect and administer your Account and initiate your authorized transactions, to help to design or improve the applicable products and services and to comply with state and federal banking regulations. Only approved personnel will have access to your personal information. Furthermore, auditing mechanisms have been put into place to further protect your information by identifying the personnel who may have accessed and in any way modified, e.g., updated or added to, your personal information.

Maintenance of Accurate Information: It is your best interests to maintain accurate records concerning your personal information. For. this reason, you are allowed to update your personal information online;;. at anytime, by using your Password to log into the Global website or by contacting Global customer service.

Limited Access to Personal Infonnation: Access is limited to your personal information to only those personnel.with a business reason for knowing such information. In addition, all personnel are educated about the importance of confidentiality and customer privacy. Individual user names and passwords are used by approved personnel to access your personal information, providing audit trails to further safeguard the privacy of your personnel information.

Third-Party Disclosure Restrictions: All third parties with a business need to access your personal information are required to adhere to stringent privacy policies. Your personal information may be supplied to a third party in order to process a transaction you have authorized or if the disdosure is allowed or required by law, e.g., the exchange of information with reputable reporting agencies in response to a subpoena, in connection with the investigation of fraudulent activity, etc.

Additional Information: If you have any questions regarding this Privacy Policy, please contact Global customer service.

CUSTOMER SERVICE INFORMATION:

Web site Address: '>'NNI.o!obaldientsoiutio!ls.colll
COITespondence Address: 4500 S. 129th E. Avenue. Ste 175
Tulsa, OK 74134
Telephone - {800}398-7191 Fax - (866) 355-8228
E-mail: customersuDool1@.aiDbafcli!SlltsOlutions.com
Note: Deposit instructions WIll be provided in the Global Welcome Packet for those customers who send in deposits.

Note: .Deposit instructions will be provided in the Global Welcome Packet for those customers who send in deposit

INmAIS

DocuSign Envelope ID: 115BF4E8-A43A-4A2<>-aS96-DAFEFB611 001

## SPECIAL PURPOSE ACCOUNT AGREEMENT & APPLICATION

I hereby apply for and Ii!gl'!:e to establish a non-imorost baanng special pllippsa IICOOunt (the 'Special Purposo Al;count') to be administered at a bank saluced by Global en''nt solutions U.C ("Global") fur the purpose of IWCUmu1a!inl!1und5to 1Upay my debts In connection with a debt saWement program (Your 'Program") sponsored by the organlzaUon Identllied below (the SPOIISOr'). I understand thiSi this Appllcation is subject to II costomer identification program. as required the USA Paillol Act and ather applicable laws; and a=rdingly. I h!!lf!1lby represent that the foUowing InformeUon is trull Bnd complete to the belli of my kno'MedllB and belief. In addition. I undllfSland that I may be required 10 previde II copIy of a driver's rlCense and/or olher Infonnation from time to lima for use In connection with the verification of my Idenlily and the admlnlStration of the AccoUllt. Furth.rmo,.,, I undermnd  that til. Spe~l  PUIPo.. Aec:DUntls Slav.med  by the btt''IIW of this AII....m.nt and that I ...m bDund by all of Its t.rms  and conditions.

## SPECIAL PURPOSE ACCOUNT OWNERSHIP, CONTROL AND USE

I understand that my Special PUlpose Accoun[, when establishBd In accorance with this Application and Special PUIJIOSIAtCOUn1Agreement, will be my sale and eJrduslve property; that only  (or Authorized Contact. if any) may authorize depolliits iQ and disbursemenlS from my Spedal Purpose Account; and that I (or AuthOlized Colltact.1f any) may withdraw funds from and/or dow my Spadal  Purpose ~unt    llt any lime as provided for In llle Agreement  'hereby  authorize (a) perioOIC deposits to be made to my Special Purpose Account pursuant to the authorlzallon provided below; (b) perlodlc disbursements to be made from my SpeclalPurpose Account pursuantto Inslruc1ionsthat I may give from time to time. In this ,egard, I hereby allihorize payment~m  my Special PI.lrpcse Accoun1of the fees and charges provlded forln this AppllcaUon and the Agreement

## PERMISS§ION TO SHARE DATA      ;

I hereby grant pennlsslon for the bank selected by Global, Global and tho SpollSOrto share infortnaUon regarding my Special Purpose Account and my Program with each other to fac!11laUhe transactions I may Initiate that Inwlve my Speelal Purp[)SC Account, and with any other party that Is essential U th" sdminl5lraUon of my SptlClal PuJp059 Account andlor my Program.  I understand lhat the Agreement pro~es  edd'!tlonllllinformation  rela~nllo privacy.



Applica!lt: ~    !1am!, (~!e~ I'rir!t dearly)

FI...N~mit

MI  -

m mldtllm

ROBITAILLE
AUthOrb:ed  contact  (opUooilt): Last Name

ROSIT Ah~lE .

ROBERT
FImName
ROBERT

mmJ"lw)

MaiUng Address

974 Broad Street

Clt).'

Stratford
city'

CT
State

~code

·06615
Zip Code

Phys,'.'f  Addl'\lss  (ifdifferentfrom  mailing address)

974 B'road Street

Stratford

CT

0·6615

World  Law  Plan
Applic,mt S lgh..-hir.e· -

j.
~

Date

## AUTHORIZATION  TO DEBIT BANK ACCOUNT
### Flnanciallnstilution  Infonnalion
B".nk.N;..m.

D_l._~~-----'    .,..........N".Jl!~!'?
;

Name (as it appears  on check)    Authorizinq  Person's Infonnation

ROBERT  ROBITAILLE

AJ~~~:a~~~~~~~~}:'~~~9;'~·.  ..~~~;'i;c~~~
Arn~uniQfD~it~ - .. .. Daie·DfD~bit~·..                                       cr  _.Q~P.4_

$ t9J~5:1·?~:on or after the. ".   ~6 ..day of each month unbl further notice

I hereby authorize Global  to initiate debit entries to my checking account (or 0 savings DC4;Ount) at the financial InsUtuUon amed above (my ·Primary Bank Acc;ounl"). In the amount(s) and on or after the date(s) set forth above, and to debit the same to my Primary  BankAccount for the purpose of transferring funds to Applicant's  Special Purpose Account. I represent that my Primary Bank Account exists; that I ONTl it; and that I will maintain  sufficient  funds in it to pennlt  the debits 10 clear oh the appHcabie  dates.  [understand that I May Incur a charge as set forth in the Schedule of Fees and Charges  If any attempted debit Is not immediately honored when presented;  and that the financial institution  providing  my Primary Bank Account may also  assess a charge if this occurs.  In addition,  I understand  that I may subsequently  designate another account for this purpose by contacting Global customer  service; and that I may also  change the corresponding amounts and dates from time to time In that manner; and that  the representations  I made  above about My Primary BankAccount will applyto any other account that I designate.

This authorization  shall remain In full force and effect until I give a written  tennlnation notice to Global  that affords  It a reasonable period of time to act 'on it.  Any such notice, and any other written notice that Is provided for in this Application and A9reeme~t, shall be sent to Global customerservice at the address  set forth  in the Agreement.  In addition, 'understand  that Global may tennlnate tilis authorization  by providing me with a Written notice at least ten (10) days prior to the actual teJJTlination.
1 Routing  Numbtr  is the 9-<iigit number appearing  in the bottom left corner of your check.
2 Account  number  is to the right of the Routing  Number and after the Check Number.

Slgnllture of PelSon Authoming   GJob"l1to Oeblt Account                    Datil

## SCHEDULE OF FEeS AND CHARGES

| | |
|---|---|
| Account Setup (oolHlmarea) | $5.00 |
| MonthlyService Charge | $9.45 |
| Transaction and other Fees | |
| Premium Deposit  Services | |
| Wire  transfer | $10.00 |
| Dlshcnorudlrctumed  deposll Item | $0.00 |
| Premium Disbursement Services | |
| Wire  trall5fer | $15.0D |
| Z'" Day Delivery (3pm CenlrBl1ime cutoff) | |
| OVernight derJVery(3pm Central11ma cutoff) | |
| Slop payment order | $20.oQ |
| | $17:50 |

## CUSTOMER  SERVICJ;

Global is the cuSiomer sel'llce agent for aU mattlmi  relaling to your Special PUrpQStt Ao:ount.  Any other questions nolaUng to yotJr Progmm  should  be addressed to your Sponsor.  See the Agreemint 10r the Global payment  and correspondence addresses.  tho address of the Global Web site and the IDA-l'n:c C3Iotno»slomer  SVMce number.

## MONTHLY  STATEMENTS

I f)lllfer 10receive my monthly statements;
O On-fil1e;  or
OVia U.S. maU (monthlystalemenls will be mDlied If neither  box is checked)

### FOR OFFICE USE ONLY

~_~.!3.~.~!?~M.E.R..~~C.()lJ~T  NUMBER

·DSe CONSUMER ACCOUNI"HuMaER